FIRST ALBANIAN "TEQE BEKTASH-IANE" IN AMERICA, Petitioner in behalf of Bektash Karamartin, Plaintiff,

v.

Walter A. SAHLI, as District Director of the Immigration and Naturalization Service for the District of Michigan, Defendant.

Civ. A. No. 24381.

United States District Court
E. D. Michigan, S. D.
May 5, 1964.

Joseph A. Gatto, Detroit, Mich., for plaintiff.

Lawrence Gubow, U. S. Atty., and Barton W. Morris, Asst. U. S. Atty., for defendant.

THORNTON, District Judge.

The Court has before it defendant's Motion for Summary Judgment directed to a complaint, the main thrust of which is that the defendant, District Director of the Immigration and Naturalization Service for the District of Michigan, acted arbitrarily and unreasonably in denying the petition of plaintiff to classify the immigrant status of one Bektash Karamartin as a nonquota immigrant minister under the provisions of 8 U.S. C.A. § 1101(a) (27) (F) (i). Plaintiff asks this Court to set aside the District Director's denial of plaintiff's petition. The procedure for granting immigrant status under the section relied upon by plaintiff, 8 U.S.C.A. § 1101(a) (27) (F) (i), is set forth in 8 U.S.C.A. § 1154, which reads as follows:

"(a) In the case of any alien claiming in his application for an immigrant visa to be entitled to an immigrant status under section 1101 (a) (27) (F) (i) or 1153(a) (1) (A) of this title, the consular office shall not grant such status until he has been authorized to do so as provided in this section.

"Petition

"(b) Any person, institution, firm, organization, or governmental agency desiring to have an alien classified as an immigrant under section 1101(a) (27) (F) (i) or 1153 (a) (1) (A) of this title shall file a petition with the Attorney General for such classification of the alien. The petition shall be in such form as the Attorney General may by regulations prescribe and shall state the basis for the need of the services of such alien and contain such additional information and be supported by such documentary evidence as may be required by the Attorney General. The petition shall be made under oath administered by any individual having authority to administer oaths, if executed in the United States, but, if executed outside the United States, administered by a consular officer.

"Approval

"(c) After an investigation of the facts in each case, and after consultation with appropriate agencies of the Government, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in respect of whom the petition is made is eligible for an immigrant status under section 1101(a) (27) (F) (i) or 1153 (a) (1) (A) of this title, approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant such immigrant status."

Section 1101(a) (27) (F) (i) of Title 8 U.S.C.A. referred to in (a) above, and invoked by plaintiff as defining the qualification of its beneficiary herein, states:

"The term 'nonquota immigrant' means—

"(F) (i) an immigrant who continuously for at least two years immediately preceding the time of his application for admission to the United States has been, and who seeks to enter the United States solely for the purpose of carrying on the vocation of minister of a religious denomination, and whose services are needed by such religious denomination having a bona fide organization in the United States; and (ii) the spouse or the child of any such immigrant, if accompanying or following to join him;".

The beneficiary, a native and citizen of Turkey, entered the United States on October 7, 1961, as a visitor. On January 18, 1962, he filed his petition with the Immigration and Naturalization Service for status as a permanent resident and on the same day plaintiff filed with the Service, a petition for classification of Karamartin as a nonquota immigrant under 8 U.S.C.A. § 1101(a) (27) (F)

(i). It is readily apparent that the date of January 18, 1962, is here controlling. Under the above definition, it is a requirement that Karamartin must have been carrying on the vocation of a minister of a religious denomination for the two-year period preceding January 18, 1962. For the period of *three months* preceding the January 18, 1962 application, Karamartin was in the United States. The investigation required by 8 U.S.C.A. § 1154(c), as to these three months, was one that could be accomplished firsthand by the appropriate agencies. Not so, however, as to the balance of the two-year period reaching back to January 18, 1960.

Investigation was made in Turkey through the consular offices of the American Embassy in Athens. The names of six persons were furnished by plaintiff as being persons who could vouch for Karamartin's status as that of a minister carrying on his vocation during the period in question. Four had addresses in Istanbul and two in Ankara. As to these six: One, a Mr. Lamii had recently died; a second, Mr. Dolen, was ill and able to come to the office of the American Consul in Istanbul only "when the weather is good." The report of that office is to the effect that the several attempts to meet with Dolen were to no avail. The two persons living in Ankara failed to respond to invitations to supply information; the remaining two persons, Mr. Goktore and Mr. Chelebi, were interviewed and the information supplied by them fell far short of verifying that Karamartin had been carrying on the vocation of a minister during the period in question. The explanation offered by plaintiff for the dearth of verification and/or reluctance to verify Karamartin's status as a full-fledged dervish in the Bektashi Order is that the Bektashi religion had been outlawed in Turkey and that it was a criminal offense punishable by a two-year prison sentence for a Bektashi dervish to conduct a religious service. Therefore, says the plaintiff, since this sect had to operate underground, it is not possible to find persons who will attest to attendance at meetings, or to the activities of their priest(s).

There are two conclusions to be drawn here, either one of which forecloses plaintiff. Because of the underground status to which the Bektashi sect was relegated, it may be that no religious meetings were held and that Karamartin was unable to function as a Bektashi dervish. In this case, he is deprived of the beneficial aid of the statute as he cannot fall within the statutory definition of § 1101(a) (27) (F) (i)—this prevails regardless of his volition one way or the other. The other conclusion is that, although Karamartin may have been carrying on the vocation of a minister, despite the underground nature of his ministry, it is impossible to determine that such facts as stated in plaintiff's petition are true—here, also, plaintiff is foreclosed by the express language of 8 U.S.C.A. § 1154(c).

We do not discuss herein the merits of plaintiff's petition. Affidavits have been filed to the effect Karamartin became a candidate for admission into the Bektashi Order in January 1952 and that he embarked upon a course of study and advanced through "diverse stations of the spiritual life" becoming ordained May 15, 1954, that his services are presently required by plaintiff and that in all respects he meets the statutory requirements. We deem such data, meritorious though it may be, irrelevant because of the procedural impasse here encountered.

It is clear that in denying the petition to classify Karamartin as a nonquota immigrant minister the defendant has not acted arbitrarily and unreasonably; that the granting of the petition here is dependent upon the availability of information from which to determine if the facts stated therein are true. Absent such availability, the petition must fail.

Summary judgment for defendant should be granted and an order may be presented accordingly.